**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5704-14T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAMEION L. EDGERTON, a/k/a
DAMION EDGERTON,

    Defendant-Appellant.

_____

Submitted April 5, 2017 — Decided May 30, 2017

Before Judges Manahan and Lisa.

On appeal from Superior Court of New Jersey,
Law Division, Monmouth County, Indictment No.
14-04-0718.

Clifford E. Lazzaro, attorney for appellant.

Christopher S. Porrino, Attorney General,
attorney for respondent (Sarah E. Ross, Deputy
Attorney General, of counsel and on the
brief).

PER CURIAM

    After his suppression motion was denied, defendant pled guilty, pursuant to a plea agreement, to three counts in a six

count indictment against him, namely, Count Two, second-degree possession of cocaine with intent to distribute, N.J.S.A. 2C:35-5b(2), Count Four, second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5b, and Count Five, second-degree possession of a firearm in the course of committing a drug offense, N.J.S.A. 2C:39-4.1a.

Defendant was sentenced on Count Two to five-years imprisonment with a two-year parole disqualifier. On Count Four, he was sentenced to five-years imprisonment with a three-year parole disqualifier. On Count Five, he was sentenced to five-years imprisonment with a three-year parole disqualifier. Counts Four and Five were ordered to be served concurrent to each other and consecutive to Count Two, thus resulting in an aggregate sentence of ten-years imprisonment with a five-year parole disqualifier. Pursuant to the plea agreement, the remaining counts of the indictment were dismissed.

The sole issue before us in this appeal is whether the trial court erred in denying defendant's motion to suppress evidence seized as a result of a warrantless search. More particularly, defendant argues:

> POINT I: BASED UPON THE TOTALITY OF THE CIRCUMSTANCES, THE TERRY STOP AND FRISK OF THE DEFENDANT WAS UNREASONABLE AND IMPERMISSIBLE.

We reject defendant's argument and affirm.

A-5704-14T1

In the early morning hours of May 17, 2013, specifically at about 2:30 a.m., Asbury Park Police Officers William Whitley and Daryl Whitley were conducting crowd control activities near a restaurant known as "Mr. Pizza." Police were routinely dispatched to this area during the early morning hours because crowds would gather after clubs closed. This was a high-crime area, with a high level of drug activity and gun violence. The officers were keenly aware of these characteristics.

While dispersing the crowd, William Whitley recognized defendant. He did not know defendant personally, but he knew him from the neighborhood in Asbury Park in which William Whitley grew up. He knew that defendant's street name was "Rocky," and that defendant had a prior history of drug activity and possession of a firearm.

A short while later, both William Whitley and Daryl Whitley heard a gunshot ring out. William Whitley called in a report of the shot to police headquarters. He then ran on foot to the location in the area of Ivy Place where the shot appeared to have come from. Daryl Whitley got into his patrol vehicle and drove toward that area.

As he was running toward the area, William Whitley heard three more shots ring out from the same area. When he arrived at Ivy Place, he observed defendant walking slowly and calmly toward

a parked vehicle with a partially opened door. As he walked, defendant was looking over his shoulder. His demeanor and conduct struck William Whitley as being suspicious.

Because of the nature of the neighborhood as a high crime area with known episodes of gun violence, because of defendant's suspicious demeanor, because William Whitley was aware of defendant's prior drug activity and firearm possession, and because four shots had recently been fired from that immediate area, with defendant being the only person there, William Whitley drew his sidearm and pointed it at defendant. He ordered him to show his hands and lay on the ground. Defendant complied. As he did so, William Whitley observed the handle of a handgun protruding from defendant's rear pants pocket.

As this was happening, Daryl Whitley arrived in his patrol car. William Whitley seized the handgun from defendant's pocket and gave it to Daryl Whitley. William Whitley proceeded to pat down defendant for any additional weapons and placed him under arrest.

At about this time, Detective Javier Campos arrived on the scene. He searched defendant's person incidental to the arrest and recovered cash in the amount of $3648.

Campos then approached the vehicle that defendant had been walking toward. He observed in plain view what appeared to be

A-5704-14T1

cocaine in the panel of the driver's side door and also in the center console area. Because of those observations, the police had the car towed to the police station. At some point, the individual who was the lessee of the car and had lawful authority over it came to the police station. She consented to a search of the car. Additional cocaine was found in the trunk.

At the suppression hearing, William Whitley and Campos testified for the State. Daryl Whitley was called by the defense. Through their testimony, the facts we have related were elicited.

Defendant's argument at the suppression hearing was that the initial investigatory stop and pat down of defendant was unjustified, and thus the seizure of the weapon from his person was unlawful, as a result of which evidence of the weapon should have been suppressed. Defendant further argued that because the initial police action was unlawful, and because it provided the impetus for the search of defendant's person and of the car, evidence seized from defendant's person and from the car should have also been suppressed because they constituted fruit of the initial unlawful search.

After hearing all of the evidence and arguments of counsel, Judge Anthony J. Mellaci, Jr. issued a comprehensive and well-reasoned oral opinion. Despite the vigorous cross-examination and defense arguments attacking the credibility of the State's

5 A-5704-14T1

witnesses, Judge Mellaci found that both William Whitley and Campos were very credible witnesses. He explained in detail the basis for those credibility findings. Likewise, he found Daryl Whitley to be very credible.

Judge Mellaci summarized his factual findings regarding the stop and pat down of defendant, the critical portion of this episode, as follows:

> He [William Whitley] says, while clearing the cloud [sic], he heard a total of four shots -- one and then three more -- coming from what he believed to be Ivy Place, which was down the street. He said how did you know that that's where they came from? I -- I -- I've heard shots before. I've heard firecrackers. Sounded like shots. Sounded like where they came from. I beat feet and ran down there. Now, whether it took him 10 seconds, 15 seconds, 20 seconds, 30 seconds, to me, is of no moment.
>
> The crucial testimony is when he got down at the end of the block, he saw one person in close proximity to him, within four or five feet, walking towards the car, reached to the car to open it up. He immediately told that person to stop, get down on the ground. It's then that the second Officer Whitley, Daryl Whitley, apparently shows up, either immediately prior to -- immediately prior to Mr. Edgerton being ordered to the ground.
>
> He said it was his intention based on the things that he had pointed out, which included what he believed to be a history of this individual with a firearm, the shots being fired in closed proximity, the length of time it took him to run down to where he located Mr. Edgerton, the fact that Edgerton was the

closest one to him, that he was looking over his shoulder at what he believed to be a little bit of a strange manner, and that he wasn't running from the shots -- he was walking -- that caused him for his safety to order him down, so that he can conduct a Perry stop -- a Terry pat down.

He indicates that before he actually took part in the Terry pat down, when defendant got to the ground, he saw the butt handle of a handgun sticking out of his back pocket. I've heard no contradictory information to that effect during this trial. I have no reason not to believe that's what he saw and I certainly have no reason to believe that he didn't have a reasonable and articulable suspicion to order the man down. Certainly, I think I would have done the same thing, if I was out in the street at that point. He takes the gun, brings him over, continues to pat him down. The gun is handed off to somebody else.

Based upon those findings of fact, the judge concluded that William Whitley, under the totality of the circumstances, possessed a reasonable and articulable suspicion that defendant was engaged in criminal activity and might be armed and dangerous, thus justifying the investigatory stop and the protective search for his own safety and that of others in the area. The judge also concluded that the plain view observation of drugs in the car and the subsequent consent search of the car were valid on their own and were not the fruit of any prior unlawful police activity. He therefore denied defendant's motion to suppress in its entirety.

A-5704-14T1

On appeal, defendant primarily reargues the facts. His argument focuses on pointing out aspects of William Whitley's testimony which might have a tendency to weaken his credibility. However, the same arguments were presented to Judge Mellaci. In the overall context of William Whitley's testimony, Judge Mellaci was satisfied that these points were relatively insignificant and did not compromise William Whitley's credibility. The judge expressed his credibility finding about William Whitley, thusly:

> Much has been made about the false testimony of Officer [William] Whitley. Look, I sat here. I watched him. I listened to him. I listened to him under direct examination and I watched him, and I listened and watched him under cross-examination. Was he the most articulate witness I've ever seen? Absolutely not. Did he leave some things out of his report that he could have put in? Every time he was questioned about something he may have left out his report, he said well, I didn't think it was important at that point. You know, I was more focused on this. To me, that's believable. I did not find him to be incredible. I did not find him to be a liar. I find him -- found him to testify to the best of his recollection, based on the one-page report that he did, of an incident that happened about 18 months ago now. I found it to be credible and I heard no contradictory story to anything he said. So, no, I -- I don't find him to be a deceptive witness, a non-credible witness.

Our review of a trial court's decision on a suppression motion is circumscribed. We must defer to the trial court's factual findings as long as those findings are supported by sufficient

credible evidence in the record. <u>State v. Elders</u>, 192 <u>N.J.</u> 224, 243 (2007). A reviewing court should especially "give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." <u>Id.</u> at 244 (quoting <u>State v. Johnson</u>, 42 <u>N.J.</u> 146, 161 (1964)). Those findings should only be disregarded when they are clearly mistaken. <u>State v. Hubbard</u>, 222 <u>N.J.</u> 249, 262 (2015) (citing <u>Johnson</u>, <u>supra</u>, 42 <u>N.J.</u> at 162). "A trial court's findings should not be disturbed simply because an appellate court 'might have reached a different conclusion were it the trial tribunal.'" <u>State v. Handy</u>, 206 <u>N.J.</u> 39, 44-45 (2011) (quoting <u>Johnson</u>, <u>supra</u>, 42 <u>N.J.</u> at 162). Abiding by these principles, we have no occasion to interfere with Judge Mellaci's credibility assessments of all of the witnesses, including William Whitley, and on all of the judge's factual findings, which are amply supported by sufficient credible evidence in the record.

Based upon those findings, Judge Mellaci applied the correct legal principles in reaching the conclusion that the initial investigatory stop and pat search were legally justified under <u>Terry v. Ohio</u>, 392 <u>U.S.</u> 1, 88 <u>S. Ct.</u> 1868, 20 <u>L. Ed.</u> 2d 889 (1968). The facts found by the trial court, which we accept, overwhelmingly support the conclusion that the reasonable and articulable

suspicion test required for a <u>Terry</u> stop was satisfied here.  We affirm substantially for the reasons expressed by Judge Mellaci in his oral opinion of November 5, 2014.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION